IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
OCT 28 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| CLEVER IDEAS, INC., f/k/a CLEVER IDEAS – DINING DOLLARS, INC., d/b/a CLEVER IDEAS, INC., an Illinois corporation, | )<br>)<br>)<br>) | |
| Plaintiff/Counterdefendant, | )<br>) | Case No. 02 C 5096<br>Judge Rebecca R. Pallmeyer<br>Magistrate Judge Arlander Keys |
| v. | )<br>) | |
| CITICORP DINERS CLUB, INC., a Delaware corporation, | )<br>)<br>) | |
| Defendant/Counterplaintiff. | ) | |

DOCKETED
NOV - 1 2002

## NOTICE OF MOTION

TO: Javier H. Rubinstein
Britton Guerrina
Jason Schmitz
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603

PLEASE TAKE NOTICE that on Thursday, October 31, 2002, at 9:30 a.m., we shall appear before Judge Rebecca R. Pallmeyer, or any judge sitting in her stead, in Courtroom 2119 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois, and then and there present Counterdefendant Clever Ideas' F.R.C.P. 12(b)(6) Motion to Dismiss Count III of Diners Club's Counterclaim, a copy of which is hereby served on you.

Dated: October 28, 2002

Respectfully submitted,

/s/ Peter B. Jurgeleit

Wendi E. Sloane
Peter B. Jurgeleit
BARACK FERRAZZANO KIRSCHBAUM
   PERLMAN & NAGELBERG LLC
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 984-3100

148985_1

## CERTIFICATE OF SERVICE

Peter B. Jurgeleit, an attorney, certifies that he caused a copy of the foregoing Notice of Motion to be served upon:

>Javier H. Rubinstein
>Britton Guerrina
>Jason Schmitz
>MAYER, BROWN, ROWE & MAW
>190 South LaSalle Street
>Chicago, Illinois 60603

via messenger before the hour of 5:00 p.m., on this the 28th day of October, 2002.

*[signature]*
Peter B. Jurgeleit

148985_1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
OCT 28 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| CLEVER IDEAS, INC., f/k/a CLEVER IDEAS – DINING DOLLARS, INC., d/b/a CLEVER IDEAS, INC., an Illinois corporation, | ) ) ) ) ) | |
| Plaintiff/Counterdefendant, | ) ) | Case No. 02 C 5096<br>Judge Rebecca R. Pallmeyer<br>Magistrate Judge Arlander Keys |
| v. | ) ) | |
| CITICORP DINERS CLUB, INC., a Delaware corporation, | ) ) ) | |
| Defendant/Counterplaintiff. | ) | |

DOCKETED
NOV - 1 2002

## COUNTERDEFENDANT CLEVER IDEAS' F.R.C.P. 12(b)(6) MOTION TO DISMISS COUNT III OF DINERS CLUB'S COUNTERCLAIM

On July 18, 2002, Plaintiff/Counterdefendant Clever Ideas, Inc., f/k/a Clever Ideas – Dining Dollars, Inc., d/b/a Clever Ideas, Inc. ("CLI") initiated the instant action against Defendant/Counterplaintiff Citicorp Diners Club, Inc. ("Diners Club"), seeking damages, declaratory and injunctive relief for Diners Club's trademark infringement and breach of contract. On September 25, 2002, Diners Club answered CLI's complaint, asserted several affirmative defenses, and filed a counterclaim against CLI, alleging two breaches of contract (Counts I and II) and seeking specific performance of a covenant not to compete (Count III). By way of the instant motion, and pursuant to Federal Rule of Civil Procedure 12(b)(6), Clever Ideas respectfully moves this Court to dismiss with prejudice Count III of Diners Club's counterclaim, for failure to state a cause of action upon which relief can be granted.

148575_1

In support of the instant motion, CLI submits the attached memorandum of law.

Dated: October 28, 2002

Respectfully submitted,

_____
Wendi E. Sloane
Peter B. Jurgeleit
BARACK FERRAZZANO KIRSCHBAUM
   PERLMAN & NAGELBERG LLC
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 984-3100

Attorneys for Plaintiff/Counterdefendant Clever Ideas, Inc., f/k/a Clever Ideas – Dining Dollars, Inc., d/b/a Clever Ideas, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV - 1 2002

| | |
|---|---|
| CLEVER IDEAS, INC., f/k/a CLEVER IDEAS – DINING DOLLARS, INC., d/b/a CLEVER IDEAS, INC., an Illinois Corporation, | ) ) ) ) ) |
| Plaintiff/Counterdefendant, | ) |
| v. | ) ) |
| CITICORP DINERS CLUB, INC., a Delaware corporation, | ) ) ) |
| Defendant/Counterplaintiff. | ) |

Case No. 02 C 5096
Judge Rebecca R. Pallmeyer
Magistrate Judge Arlander Keys

FILED
OCT 2 8 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MEMORANDUM OF LAW IN SUPPORT OF COUNTERDEFENDANT
CLEVER IDEAS' MOTION TO DISMISS COUNT III
OF DINERS CLUB'S COUNTERCLAIM**

**I.    INTRODUCTION**

This dispute arises out of the contract (the "Agreement") between Citicorp Diners Club, Inc. ("Diners Club") and Clever Ideas, Inc. ("CLI"), which provided for a restaurant savings program to Diners Club cardmembers. There is no question that Diners Club had the right to terminate the agreement, and that Diners Club did so on May 21, 2002, after it gave CLI notice of CLI's purported breaches and an opportunity to cure.

Among the issues in this lawsuit are the consequences of Diners Club's decision to terminate the Agreement. If, as Diners Club contends and CLI denies, Diners Club terminated the Agreement because of CLI's material breach, then Diners Club is not subject to a three-year non-compete provision precluding it from offering a restaurant discount program to its cardmembers. If, on the other hand, CLI did not materially breach the Agreement, then Diners Club will be bound to this three-year non-compete.



149095_2

In Count III of its counterclaim, Diners Club now alleges – for the first time ever – that CLI "constructively terminated" the Agreement. The motivation for this counterclaim is simple – if CLI terminated the Agreement (for reason other than Diners Club's material breach), then CLI would itself be subject to a three-year non-compete, precluding it from offering a discount dining program. Accordingly, in Count III, Diners Club seeks to enjoin CLI from operating its own dining discount program under the contractual non-compete provision.

Coming at this late date – over six months after Diners Club first notified CLI of its purported breaches of the Agreement and over five months after Diners Club terminated the Agreement – Count III can be nothing more than a tactical maneuver designed to put pressure on CLI. Unfortunately for Diners Club, the tactic is as ill-founded as it is transparent. Constructive termination requires allegations to show that that CLI essentially ceased to recognize the Agreement or that CLI imposed intolerable conditions on Diners Club. The counterclaim contains no such allegations. Nor can it. The allegations of the counterclaim plead that Diners Club was unhappy with CLI's performance, not that CLI stopped performing or made it impossible for Diners Club to perform.

This Court should therefore dismiss Count III of the counterclaim as legally deficient.

## II. THE ALLEGATIONS OF COUNT III

The allegations of Count III itself present the starting point for a motion to dismiss under Rule 12(b)(6) since the motion tests the legal sufficiency of the claim. *See Rossi Distribs., Inc. v. Lavazza Premium Coffees Corp.*, No. 01 C 9271, 2002 U.S. Dist. LEXIS 18807, at *2 (N.D. Ill. Oct. 2, 2002). Although "all well-pleaded facts and allegations . . . must be accepted as true,"[1]

---

[1] CLI accepts the allegations as true only for purposes of this motion to dismiss, as it must.

the counterclaim must nevertheless "allege facts sufficiently setting forth the essential elements of the cause of action." *Id.* at *3. Count III of the Counterclaim does not meet this standard.

**A.     The Agreement's Non-Compete Provisions.**

At the heart of the instant lawsuit is the 1990 contract between the parties to provide a restaurant savings program to Diners Club cardmembers (Cntrclm. ¶ 7), particularly the provisions relating to the effect of terminating the Agreement.

Specifically, if Diners Club terminated the Agreement for reasons other than CLI's material breach, then, for a period of three years after the effective date of such termination, Diners Club would be precluded from offering a competing dining discount program to its cardmembers. (*See* Cntrclm. Ex. E, Art. IV(C)(1).) By contrast, if Diner Club terminated the Agreement because of CLI's material breach, then Diner Club would not be bound by this non-compete. Significantly, as long as Diners Club is the party terminating the Agreement, CLI is not subject to any non-compete provision. (*See* Cntrclm. Ex. E, Art. IV(C)(1).)

If, however, CLI terminated the Agreement for reasons other than Diners Club's material breach, then CLI would be prohibited from further establishing any discount dining programs for a period of three years from the effective date of termination. (*See* Cntrclm. Ex. E , Art. IV(C)(3)-(4).)

**B.     Diners Club Terminates the Agreement.**

On April 17, 2002, Diners Club sent CLI a letter providing notice of certain purported material breaches of the Agreement (Cntrclm. ¶ 40) and informing CLI it had 30 days within which to cure its purported breaches. (Cntrclm. ¶ 41). Significantly, Diners Club does not allege that in its April 17th letter or in any prior correspondence, it informed CLI that CLI had

149095_2                                                3

constructively terminated the Agreement. CLI responded by letter denying that it breached the Agreement. (Cntrclm. ¶ 41.)

On May 21, 2002, Diners Club terminated the Agreement and sent a letter to CLI informing it of the contract's termination. (Cntrclm. ¶ 42.) Again, Diners Club does not allege that its termination letter informed CLI that CLI had constructively terminated the Agreement. Nor does Diners Club allege that it ever informed CLI that Diners Club interpreted CLI's conduct as constructively terminating the Agreement.

### C.   Litigation Ensues.

On July 18, 2002, CLI commenced this litigation by filing its complaint, which included among its counts, a claim for a declaratory judgment that CLI had not materially breached the Agreement and that Diners Club was, accordingly, bound to observe the three-year non-compete. (*See* Cmplt. Count X.)

Diners Club responded by bringing its own counterclaim. According to Diners Club, CLI materially breached the Agreement. (*See, e.g., id.* ¶¶ 21, 31, 40-42, 45-46, 48, 57-59.) But Diners Club now wants more than just contract damages and freedom from the constraints of the non-compete.

For the first time ever, Diners Club now claims that it was CLI that terminated the Agreement. Apparently unfazed by the inconsistencies between its admitted conduct and its new legal theory, Diners Club asserts that CLI's allegedly material breaches (a) resulted in the "total failure of the discount dining program," and (b) were of "such a gravity as to constitute a *constructive termination* of the Agreement." (*Id.* ¶¶ 57, 59 (emphasis added).) Diners Club also alleges, again for the first time, that under Article IV(C)(3) of the Agreement, CLI should be restrained from further establishing discount dining programs.

### III. ARGUMENT

There are few cases addressing the issue of constructive termination outside the context of employment. However, regardless of how courts have articulated the test, constructive termination requires more than a breach of contract. The party constructively terminating the agreement must have essentially refused to perform or made it virtually impossible for the non-breaching party to perform.

It is not surprising that few cases address, much less find, constructive termination outside of the employment context. Unless applied sparingly, this doctrine would subsume virtually every claim for breach of contract. Such an interpretation would play havoc with contract law by, for example, defeating the parties' intent in specifying what conduct constitutes breach and what circumstances give rise to the right to terminate, and encouraging parties to circumvent any obligations to give notice and cure periods.

Here, Diners Club's claim for constructive termination equates breach of contract with termination of contract. The essence of its claim is that CLI purportedly materially breached the contract and refused to cure its breaches. Courts have not permitted parties to a contract to recast a breach of contract claim as constructive termination. This Court too should decline the invitation to expand the law of constructive termination.

Allowing Diners Club to shift responsibility for the consequences of termination to CLI is particularly inappropriate. The Agreement imposes a specific disincentive for termination where the non-terminating party has not materially breached the Agreement – a three-year non-compete on the terminating party. By deciding to terminate the Agreement, Diners Club undertook the risk that it would have to establish that CLI materially breached the Agreement if it is to be allowed to offer its own competing dining discount program. Diners Club should not be

permitted to circumvent its own freely-negotiated contractual obligation by transforming its claim that CLI breached into a claim that CLI terminated the Agreement.

A. **Constructive Termination Requires Refusal or Impossibility of Performance.**

1. **The *Michaelis* Analysis.**

*Michaelis v. Comdisco, Inc.*, No. 94-C-1036, 1995 U.S. Dist. LEXIS 1404, at *5-*8 (N.D. Ill. Feb. 3, 1995), is one of the only Illinois cases recognizing constructive termination outside the employment context. There, the defendant was alleged to have (a) negotiated a separate transportation services contract nine months prior to the expiration of defendant's pre-existing, exclusive one-year transportation services contract with plaintiff, and (b) refused to continue shipping any goods with plaintiff during the last six months of the parties' pre-existing, one-year transportation services contract. Judge Castillo concluded that "[r]efusal to ship or continue shipping goods for the last six months of a one year term contract is tantamount to termination or suspension of the Agreements and would, for all practical purposes, nullify all of the Agreements' provisions regarding the contracts' term and possible termination." *Id.* at *9.

The allegations here present a very different scenario. Count III contains no allegations that CLI refused to perform or that there were no participating restaurants in the program. Rather, Diners Club alleges that CLI "materially breached its core obligations under the Agreement." (Cntrclm. ¶ 57.) These alleged breaches consist of the decline in the number of member restaurants from 1,689 to 664, CLI's purported failure to perform tasks in accordance with industry standards, CLI's purported failure to provide updated financial information, and CLI's purported failure to comply with its best efforts obligations. (*See* Cntrclm. ¶¶ 24, 34. 38, 40.) If these alleged breaches were tantamount to constructive termination, then every breach of

contract action would give rise to a constructive termination claim. This is particularly true here, where the Agreement distinguishes between material and non-material breaches, and provides different remedies depending on who terminated the contract and the reason for such termination.

### 2. The *Advanta Mortgage* Analysis.

Magistrate Ashman recently addressed the concept of constructive termination under California law, offering a more detailed standard of analysis. *See Bank One Fin. Servs., Inc. v. Advanta Mortgage Corp. USA*, No. 00-C-8027, 2002 U.S. Dist. LEXIS 960, at *32 (N.D. Ill. Jan. 22, 2002). Magistrate Ashman found that, under California law, the concept of constructive termination applies to only two kinds of situations: (a) where one party "unilaterally modifies the terms of the parties' contractual relationship if the modification substantially interferes with the other party's ability to obtain the benefits of the contract," and (b) where one party "unilaterally imposes conditions so intolerable that the other party has no option but to resign." *Id.* Applying either of these tests, Count III fails to state a claim.[2]

### a. CLI Has Neither Unilaterally Modified the Agreement Nor Interfered With Diners Club's Ability to Obtain the Agreement's Benefits.

Count III fails to allege that CLI unilaterally modified the terms of the Agreement. In fact, with the exception of a few procedural deviations made unilaterally by Diners Club or bilaterally with CLI's consent (*see* Cntrclm. ¶¶ 13-16), Count III contains no allegations that the terms of the Agreement changed at all. According to Count III, CLI simply failed to live up to its

---

[2] Federal courts in Illinois have also implicitly recognized constructive termination of contract under the federal Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-06. *See, e.g., Duff v. Marathon Petroleum Co.*, 51 F.3d 741 (7th Cir. 1995); *Shell Oil Co. v. Tzavaras*, No. 97 C 4479, 1998 U.S. Dist. LEXIS 8657 (N.D. Ill. June 2, 1998). Even if the standard articulated in *Duff* under that federal statute – the party alleged to have constructively terminated the contract (the petroleum franchisor) must have either acted in bad faith or outside the normal course of business, *see Duff*, 51 F.3d at 744 – were applicable to the common law of Illinois contracts, Count III would

obligations under the Agreement. Such allegations, however, are not tantamount to CLI's unilateral modification of the terms of the Agreement, regardless of their supposed "gravity."

Nor has Diners Club alleged that CLI took action to substantially interfere with Diners Club's ability to obtain the benefits of the Agreement. While Diners Club was allegedly unhappy with the decline in the number of restaurants in the discount dining program, it does not allege that the program ceased operating or that CLI prevented Diners Club cardmembers from obtaining a discount at the over 660 restaurants remaining in the program at the time of Diners Club's termination of the Agreement. (*See* Cntrclm. ¶¶ 24, 28.)[3] Also conspicuously absent from Count III are any allegations that CLI revoked Diners Club's license to use CLI's LeCard trademarks (*see id.* Ex. E, Art. IV(A)(2)(b)), granted any other party the right to use CLI's LeCard trademarks in connection with any other discount dining program (*see id.* Ex. E., Art. III(D)(2)), ceased paying Diners Club its marketing fee (*see id.* Ex. E, Art. III(E)(3)), abandoned the Plan, frustrated the Plan's purpose or treated the Agreement as terminated.

Mere allegations of breach, such as those contained in Count III, cannot be legally equivalent to allegations of interference sufficient to constitute termination. If they were, any distinction between breach and termination would be rendered meaningless, and *every* breach of contract would be deemed to "interfere with the other party's ability to obtain the benefits of the contract."

Significantly, Diners Club's claim of constructive termination is belied not only by its own allegations, but by its own conduct as well. If, as Diners Club maintains, CLI had constructively terminated the Agreement, Diners Club would have had no need to give CLI

---

still fail, for it contains absolutely no allegations of bad faith, nor any allegation that Clever Ideas' conduct was somehow outside the "normal course of business."

notice of the purported breaches and an opportunity to cure, for such action would be superfluous. At a minimum, Diners Club would have notified CLI of its position that CLI constructively terminated the Agreement and, as such, was bound by the non-compete. There are no such allegations because this never occurred.

### b. CLI Has Not Imposed Intolerable Conditions on Diners Club.

Under *Advanta Mortgage*, Diners Club could also state a cause of action for constructive termination if CLI "unilaterally impose[d] conditions so intolerable that [Diners Club] ha[d] no option but to resign." 2002 U.S. Dist. LEXIS 960, at *32. Count III contains no such allegations.

Moreover, this standard of analysis has little application outside the context of the employment relationships, which is where is has been applied.[4] Even if the Court were to look to the standards of Illinois constructive discharge law, Count III still fails to state a claim. "Constructive discharge occurs when the employer alters the working conditions of an employee to the point where the employee had effectively been fired and compelled to leave." *Raintree Health Care Ctr. v. Human Rights Comm'n*, 275 Ill. App. 3d 387, 395, 655 N.E.2d 944, 951 (1st Dist. 1995), *aff'd*, 173 Ill. 2d 469, 672 N.E.2d 1136 (1996).

Such is not the case here. Diners Club does not allege that CLI altered any of the parties' respective obligations such that the dining discount program was effectively terminated or that Diners Club was forced to discontinue the program. Rather, Diners Club alleges only that it believes that CLI breached its obligations and, as a result, there was a decline in the number of

---

[3] The fact that over 660 restaurants were participating in the program at the time Diners Club notified CLI of the purported breaches belies Diners' Club's allegations that the discount dining program was a "total failure."

[4] Nor does it make logical sense to expand this standard of analysis outside of the context of constructive termination/discharge case law because (a) in such cases, no contract governs the relationship between the parties, and (b) there are countless material differences between an at-will employment relationship and a relationship stemming from a written contract between two business organizations.

149095_2          9

participating restaurants. While Diners Club may have been dissatisfied with the number of participating restaurants, such dissatisfaction is not tantamount to a prohibition on Diners Club's ability to offer the program to its cardmembers. This is precisely the situation the Agreement contemplated, by giving both parties the right to terminate the Agreement and by imposing a disincentive for a party either to breach or to terminate lightly. Under either scenario, the three-year non-compete would apply.

### IV. CONCLUSION

For the reasons stated herein, CLI respectfully requests that this Court dismiss Count III of the Counterclaim with prejudice and order such other and further relief as this Court deems just and appropriate.

Dated: October 28, 2002

Respectfully submitted,

_____
Wendi E. Sloane
Peter B. Jurgeleit
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLC
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 984-3100

Attorneys for Plaintiff/Counterdefendant Clever Ideas, Inc., f/k/a Clever Ideas – Dining Dollars, Inc., d/b/a Clever Ideas, Inc.

## CERTIFICATE OF SERVICE

 Peter B. Jurgeleit, an attorney, certifies that he caused a copy of the foregoing Counterdefendant Clever Ideas' F.R.C.P. 12(b)(6) Motion to Dismiss Count III of Diners Club's Counterclaim to be served upon:

>Javier H. Rubinstein
>Britton Guerrina
>Jason Schmitz
>MAYER, BROWN, ROWE & MAW
>190 South LaSalle Street
>Chicago, Illinois 60603

via messenger before the hour of 5:00 p.m., on this the 28th day of October, 2002.

*Peter B. Jurgeleit*
Peter B. Jurgeleit

148575_1