# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CLEVER IDEAS, INC., f/k/a CLEVER )
IDEAS – DINING DOLLARS, INC., )
d/b/a CLEVER IDEAS, INC., an )
Illinois corporation, )
           )
           )   Case No. 02 C 5096
     Plaintiff/Counterdefendant, )   Judge Rebecca R. Pallmeyer
           )   Magistrate Judge Arlander Keys
v. )
           )
CITICORP DINERS CLUB INC., )
a Delaware corporation, )
           )
     Defendant/Counterplaintiff. )

**DOCKETED**

**DEC 1 0 2002**

## NOTICE OF MOTION

**FILED**

**DEC - 6 2002**

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

TO:     Wendi E. Sloane, Esq.
Peter B. Jurgeleit, Esq.
BARACK FERRAZZANO KIRSCHBAUM
   PERLMAN & NAGELBERG LLC
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
Attorneys for Plaintiff/Counterdefendant Clever Ideas, Inc.

PLEASE TAKE NOTICE that on December 19, 2002 at 9:00 a.m., or as soon as possible thereafter, the undersigned shall appear before the Honorable Rebecca R. Pallmeyer, or any judge sitting in said judge's stead, in Courtroom 2119 at the United States District Court for the Northern District of Illinois, 219 South Dearborn, Chicago, Illinois, and present the attached **MOTION OF DEFENDANT/COUNTER-PLAINTIFF CITICORP DINERS CLUB INC. FOR JUDGMENT ON THE PLEADINGS**, which is hereby served upon you.

                       _____
                       One of the attorneys for defendant/counter-plaintiff
                       Citicorp Diners Club Inc.

                       Javier H. Rubinstein
                       Britton B. Guerrina
                       Jason K. Schmitz
                       MAYER, BROWN, ROWE & MAW
                       190 South LaSalle Street
                       Chicago, IL 60603
                       (312) 782-0600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CLEVER IDEAS, INC., f/k/a CLEVER )
IDEAS – DINING DOLLARS, INC., )
d/b/a CLEVER IDEAS, INC., an )
Illinois corporation, )
                                 )    Case No. 02 C 5096

Plaintiff/Counterdefendant, )
                                 )    Judge Rebecca R. Pallmeyer
                                 )    Magistrate Judge Arlander Keys
v. )
                                 )

CITICORP DINERS CLUB INC., )
a Delaware corporation, )
                                 )

Defendant/Counterplaintiff. )

DOCKETED
DEC 2 0 2002

FILED
DEC - 6 2002
MICHAEL W. DOBBINS
CLERK U.S. DISTRICT COURT

## CITICORP DINERS CLUB INC.'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

Defendant/counterplaintiff, Citicorp Diners Club Inc. ("Diners Club") respectfully

moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the

pleadings with respect to Count I, II, III, V, VI, VII and VIII of Clever Ideas, Inc.'s, f/k/a Clever

Ideas – Dining Dollars, Inc., d/b/a Clever Ideas, Inc. ("Clever Ideas") Complaint for Trademark

Infringement, Injunctive Relief and Declaratory Judgment ("Complaint") as to all claims

contained therein of trademark infringement, unfair competition and deceptive trade practices

relating to (1) Diner's Club refusal to immediately replace all existing Corporate DC/LeCard

Cards with Diners Club charge cards that do not bear the LeCard mark after the termination of

the 1990 "LeCard Card" Agreement between Diners Club and Clever Ideas, and (2) Diners

Club's alleged unauthorized use of the LeCard mark outside of the Agreement (and the license

granted thereunder) in connection with the Corporate DC/LeCard Plan. In support of its motion,

Diners Club states as follows:

22

1.      Counts I, II, III, V, VI, VII and VIII of the Complaint allege trademark infringement, unfair competition and deceptive trade practices as a result of (1) Diners Club's refusal to immediately replace all existing Corporate DC/LeCard Cards with Diners Club charge cards that do not bear the LeCard mark, and (2) Diners Club's allegedly unauthorized use of the LeCard mark outside of the 1990 "LeCard Card" Agreement (and the license granted thereunder) in connection with the Corporate DC/LeCard Plan.

2.      Clever Ideas admits in their Answer to Diners Club's Counterclaim and Affirmative Defenses ("Counterclaim Answer") that Clever Ideas was aware at least as early as 1996 that "CDC first offered the LeCard restaurant savings program as a benefit to holders of the Diners Club corporate card."

3.      Despite its knowledge of the Diners Club Corporate Card program, and Diners Club's use of the LeCard mark in conjunction with the Corporate Card program no later than 1996, Clever Ideas did not request that Diners Club refrain from using the LeCard mark on Corporate Cards. Nor did Clever Ideas in any way claim or suggest that Diners' Club's use of the LeCard mark was in any way unauthorized.

4.      To the contrary, in 1997 Clever Ideas sent a letter to Diners Club in which it affirmatively *demanded* that Diners Club include the LeCard mark on all Diners Club cards, including Corporate Cards.

5.      Clever Ideas also admits in its Complaint that the ". . . . LeCard logo was printed on the lower right hand corner of the reverse side of the Diners Club card" in connection with the Diners Club Corporate Card program at least as early as 1996. Complaint, ¶¶ 27-28.

2

6.     Clever Ideas also knew, at the very latest, that the Corporate Card program was not covered by the 1990 "LeCard Card" Agreement on March 30, 1999, when the parties signed a Letter Agreement confirming this.

7.     Despite all of this, Clever Ideas did not file its Complaint alleging trademark infringement, unfair competition and deceptive trade practices until July 18, 2002, five and one-half years after Clever Ideas knew of the alleged trademark infringement, unfair competition and deceptive trade practices with respect to the Corporate DC/LeCard Cards, and more than three years after the parties signed their Letter Agreement on March 30, 1999.

8.     At the very latest, Clever Ideas knew of the alleged trademark infringement, unfair competition and deceptive trade practices with respect to the Corporate DC/LeCard Cards in March 1999.

9.     Counts I, III, V, VI all claim violations of the Lanham Act. The three-year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. applies to each of these causes of action.

10.     Likewise, the allegations in Count VIII of the Complaint for deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. are explicitly incorporated by the Illinois Consumer Fraud and Deceptive Business Practices Act and are thereby also governed by the three-year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act.

11.     As for the common law trademark infringement claims contained in Counts II and VII, the three-year statute of limitations period applicable to the Lanham Act claims is also applicable to the common law trademark claims.

3

12.     For the same reasons mentioned above, Counts I, II, III, V, VI, VII and VIII also are barred by the doctrine of laches.

13.     Delay in filing suit that goes beyond the analogous state statute of limitations raises a presumption of laches.

14.     As the allegations of the Complaint and answer make clear, Diners Club has substantially changed its position in reliance on an actual belief that Clever Ideas would not pursue it claims by investing enormous resources into the Corporate Card program.

15.     Clever Ideas knew of the alleged violations contained in Counts I, II, III, V, VI, VII and VIII of the Complaint more than three years before filing the Complaint.

16.     The alleged harm was definite and discoverable as soon as Diners Club was using the LeCard mark on corporate cards.

17.     Because Clever Ideas waited over three years after it knew of the alleged activity giving rise to the alleged trademark infringement, unfair competition and deceptive trade practices, Clever Ideas' Counts I, II, III, V, VI , VII and VIII of the Complaint are barred by the statute of limitations and laches.

WHEREFORE, Diners Club respectfully requests that judgment on the pleadings be entered in favor of Diners Club and against Clever Ideas with respect to Counts I, II, III, V, VI, VII and VIII of the Clever Ideas Complaint.

Respectfully submitted,

CITICORP DINERS CLUB INC.

By:

Javier H. Rubinstein, Esq.
Britton B. Guerrina, Esq.
Jason K. Schmitz, Esq.
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603-3441
(312) 782-0600

Dated: December 6, 2002

5

## CERTIFICATE OF SERVICE

Britton B. Guerrina, an attorney duly licensed to practice in the State of Illinois, certifies

that he caused a copy of the foregoing Citicorp Diners Club Inc.'s Motion for Judgment on the

Pleadings to be served upon:

> Wendi E. Sloane, Esq.
> Peter B. Jurgeleit, Esq.
> BARACK FERRAZZANO KIRSCHBAUM
>   PERLMAN & NAGELBERG LLC
> 333 West Wacker Drive, Suite 2700
> Chicago, Illinois 60606
> Attorneys for Plaintiff/Counterdefendant Clever Ideas, Inc.

via messenger before the hour of 5:00 p.m. this 6th day of December, 2002.

Britton B. Guerrina

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

DEC 0 6 2002

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

| | |
|---|---|
| CLEVER IDEAS, INC., f/k/a CLEVER IDEAS – DINING DOLLARS, INC., d/b/a CLEVER IDEAS, INC., an Illinois corporation, | ) ) ) ) ) |
| Plaintiff/Counterdefendant, | ) ) |
| v. | ) ) ) |
| CITICORP DINERS CLUB INC., a Delaware corporation, | ) ) ) |
| Defendant/Counterplaintiff. | ) ) |

Case No. 02 C 5096
Judge Rebecca R. Pallmeyer
Magistrate Judge Arlander Keys

**DOCKETED**

DEC 2 0 2002

**MEMORANDUM IN SUPPORT OF CITICORP DINERS CLUB INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant/counterplaintiff, Citicorp Diners Club Inc. ("Diners Club") respectfully

submits this Memorandum in Support of its Motion for Judgment on the Pleadings as to Count I,

II, III, V, VI, VII and VIII of Clever Ideas, Inc.'s, f/k/a Clever Ideas – Dining Dollars, Inc., d/b/a/

Clever Ideas, Inc. ("Clever Ideas") Complaint for Trademark Infringement, Injunctive Relief and

Declaratory Judgment ("Complaint") as to all claims contained therein of trademark

infringement, unfair competition and deceptive trade practices relating to (1) Diners Club's

refusal to immediately replace all existing Corporate DC/LeCard Cards with Diners Club charge

cards that do not bear the LeCard mark after the termination of the 1990 "LeCard Card"

Agreement between Diners Club and Clever Ideas, and (2) Diners Club's alleged unauthorized

use of the LeCard mark outside of the Agreement (and the license granted thereunder) in

connection with the Corporate DC/LeCard Plan.

2 2

## PRELIMINARY STATEMENT

Diners Club seeks judgment on the pleadings with respect to Count I, II, III, V, VI VII and VIII of the Complaint. These Counts assert statutory and common law claims of trademark infringement, unfair competition and deceptive trade practices resulting from (1) Diners Club's refusal to immediately replace all existing Corporate DC/LeCard Cards with Diners Club charge cards that do not bear the LeCard mark after the termination of the 1990 "LeCard Card" Agreement ("Agreement") between Diners Club and Clever Ideas, and (2) Diners Club's alleged unauthorized use of the LeCard mark outside of the Agreement (and the license granted thereunder) in connection with the Corporate DC/LeCard Plan.

The allegations of the Complaint unequivocally confirm that Clever Ideas knew of Diners Club's allegedly unauthorized use of the LeCard mark in 1996. Yet, Clever Ideas delayed and did not file the Complaint in this case until July 18, 2002, five and one-half years after Clever Ideas first knew of the facts underlying Counts I, II, III, V, VI, VII and VIII. Each of these counts, which all stem from the same allegedly unauthorized use, are plainly time-barred by a three-year statute of limitations period that governs these claims, and also by the doctrine of laches. Therefore, Diners Club is entitled to a judgment on the pleadings with respect to the Corporate DC/LeCard Cards claims contained in these Counts.

## STATEMENT OF FACTS

This dispute arises out of the 1990 Agreement between Diners Club and Clever Ideas to provide a restaurant saving program to Diners Club cardmembers. The 1990 Agreement has since been terminated. This lawsuit concerns the parties' obligations under the 1990 Agreement as well as their post-termination obligations. Counts I, III, V and VI of the Complaint purport to assert claims of trademark infringement and unfair competition under the Lanham Act, 15 U.S.C.

2

§§ 1114, 1125(a), resulting from (a) Diners Club's refusal to replace immediately all existing Corporate DC/LeCard Cards with Diners Club charge cards that do not bear the LeCard mark and (b) Diners Club's allegedly unauthorized use of the LeCard mark outside of the 1990 "LeCard Card" Agreement (and the license granted thereunder) in connection with the Corporate DC/LeCard Plan. Counts II and VII of the Complaint allege common law trademark infringement and unfair competition. Count VIII alleges deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., as a result of the same alleged activity complained of in Counts I, III, V and VI.

The 1990 Agreement was executed on November 6, 1990. (Complaint, ¶ 15) The Corporate DC/LeCard Plan did not exist at the time the 1990 Agreement was executed. Diners Club began testing the Corporate Card program in 1994 and 1995. (First Affirmative Defense, ¶ 4) In 1996, a select few corporations participated in the testing of the Corporate Card Program. (Counterclaim, ¶ 16) In 1998, the Corporate Card Program was launched nationally and was offered as a benefit to Diners Club corporate accounts. (Counterclaim, ¶ 16)

Clever Ideas alleges in its Complaint that in 1996 "CDC first offered the LeCard restaurant savings program as a benefit to holders of the Diners Club corporate card." (Counterclaim Answer, ¶ 16). Yet, despite its knowledge of the Corporate Card program, and Diners Club's use of the LeCard mark in conjunction with the Corporate Card program, as early as 1996, Clever Ideas did not request that Diners Club refrain from using the LeCard mark on Corporate Cards. (First Affirmative Defense, ¶ 5) Nor did Clever Ideas in any way assert or suggest to Diners Club that Diners Club's use of the LeCard mark on the Diners Club Corporate Cards was in any way unauthorized. To the contrary, in 1997 Clever Ideas sent a letter to Diners Club in which it affirmatively demanded that Diners Club include the LeCard mark on all Diners

3

Club cards, including Corporate Cards. (First Affirmative Defense, ¶ 5) See also Exhibits A-C to the Answer, incorporated herein. Furthermore, Clever Ideas admits in its Complaint that the "LeCard logo was printed on the lower right hand corner of the reverse side of the Diners Club card." (Counterclaim Answer, ¶ 14)

In short, the pleadings confirm that Clever Ideas knew in 1996 that Diners Club was offering a restaurant savings program to corporate cardmembers under the LeCard name and knew in early 1997 that the LeCard logo was printed on the reverse side of Diners Club corporate cards. These are the basic facts upon which Clever Ideas has based the claims listed above, and they confirm that each of these claims is time barred.

## THE APPLICABLE LAW

### A.    Judgment on the Pleadings

A motion for judgment on the pleadings may be made at any time "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings brought pursuant to Federal Rules of Civil Procedure 12(c) is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *Divane v. Nextiraone, LLC,* 2002 WL 31433504, *1 (N.D. Ill. 2002) (citing *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir. 1991)). Judgment on the pleadings is proper if it is "beyond doubt that the non-movant can plead no facts that would support his claim for relief." *Prudential Securities Inc. v. Hornsby,* 865 F.Supp. 447 (N.D. Ill. 1994) (citing *Wood,* 925 F.2d at 1581).

### B.    Statute of Limitations

When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so. *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1985). Although the Lanham Act does not provide a statute of limitations, federal courts, including the Seventh

4

Circuit, have referred to analogous state statutes of limitations to determine the applicable limitations period. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999). The most analogous Illinois limitations period for causes of action under the Lanham Act is the three year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10(a). *Chattanoga Manufacturing, Inc. v. Nike, Inc.*, 140 F.Supp. 2d 917, 931 (N.D. Ill. 2001) (citing *Hot Wax, Inc. v. Warsaw Chem. Co., Inc.*, 45 F.Supp. 2d 635, 637 (N.D. Ill. 1999)); *Kitchen Connection, Inc. v. Pampered Chef, Ltd.*, 1999 WL 1101231, *5 (N.D. Ill.1999); *Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 WL 798907, *8 (N.D. Ill.1997). The Consumer Fraud and Deceptive Business Practices Act provides that "any action for damages under this Section shall be forever barred unless commenced within 3 years after the cause of action accrued. . ." 815 ILCS 505/10(a). The three-year statute of limitations period under the Consumer Fraud and Deceptive Business Practices Act also applies to CLI's Corporate DC/LeCard Cards claims in Count VIII brought under the Illinois Uniform Deceptive Trade Practices Act. See *Hexagon Packaging Corp. v. Manny Gutterman & Associates, Inc.*, 2000 WL 226396, *7 (N.D. Ill. 2000). Section 43(a) of the Lanham Act protects common law trademarks as well as federally registered trademarks. *Blau Plumbings, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 608 (7th Cir. 1986).

Accordingly, the three-year statute of limitations period applicable to the Lanham Act claims is also applicable to the common law trademark claims. It is commonplace for trademark claims and cases to be dismissed as time-barred. See *Hot Wax, Inc.*, 45 F.Supp. 2d at 647; *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F.Supp. 2d 330, 334 (S.D. N.Y. 2000); *Derrick Manufacturing Corp. v. Southwestern Wire Cloth, Inc.*, 934 F.Supp. 796, 808 (S.D. Tex. 1996);

*Cellasto Corp. v. International Telephone and Telegraph Corp.*, 215 U.S.P.Q. 998, 999 (E.D. Mich. 1982).

### C.     Continuing Wrong Doctrine

Under the continuing wrong doctrine, a plaintiff can recover for a series of wrongful acts, even if the earlier acts fell outside the statute of limitations. Only the last infringing act need be within the statutory period. *Taylor v. Meirick*, 712 F.2d 1112, 1119 (7th Cir. 1983). However, while trademark infringement generally is considered a continuing wrong, *McCarthy on Trademarks and Unfair Competition*, § 31.11[1], the continuing violation doctrine does not apply when the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward and seeking redress. *Second Chance Body Armor, Inc. v. American Body Armor, Inc.*, 1996 WL 568794, *5 (N.D. Ill.1996) (citing *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1992)). Nor does it apply when the plaintiff "knew or should have known of the violation but nonetheless failed to come forward and file suit at an earlier time." *Second Chance Body Armor 1996 WL 568794 at *5* (citing *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993)).

The Seventh Circuit has held that the continuing wrong applies to Lanham Act claims. *Hot Wax, Inc.*, 45 F.Supp.2d at 647 (citing *Taylor*, 712 F.2d at 1119). However, the Seventh Circuit has also held that "the fact that a series of . . . unlawful acts is indeed a series, a continuum, rather than a concatenation of unrelated acts, will delay the deadline for suing with respect to the earlier acts in the series only if their character was not apparent when they were committed but became so when viewed in the light of the later acts." *Hot Wax, Inc.*, 45 F.Supp.2d at 647 (citing *Moskowitz*, 5 F.3d at 279).

### D.     The Laches Doctrine.

6

The elements of the equitable doctrine of laches are well established: (1) unreasonable delay by the plaintiff in seeking redress for the alleged trademark infringement, which (2) results in harm or prejudice to the defendant. See *Second Chance Body Armor, Inc. v. American Body Armor & Equipment, Inc.*, 1999 WL 608718, 6 (N.D. Ill. 1999) (citing *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1091 (7th Cir. 1992)).

A presumption of laches applies when the delay exceeds the analogous state statute of limitations. *Hot Wax*, 191 F.3d at 821. In order to establish "prejudice," the defendant must prove that either: (1) its ability to defend itself in the lawsuit has been significantly diminished or (2) it has substantially changed its position in reliance on an actual belief that plaintiff would not pursue its claim. *Hot Wax, Inc. v. S/S Car Care*, 1999 WL 966094, *6 (N.D. Ill. 1999) The Seventh Circuit has applied a sliding scale: the longer the delay, the less proof of prejudice that is required. *Hot Wax*, 191 F.3d at 824.

## ARGUMENT

**I.  COUNTS I, II, III, V, VI, VII AND VIII ARE BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS.**

**A.  Clever Ideas Was Aware Of The Facts Underlying Its Claims More Than Three Years Before It Commenced This Suit.**

Clever Ideas admits in its Answer to Diners Club's Counterclaim that Clever Ideas was aware that in 1996 "CDC first offered the LeCard restaurant savings program as a benefit to holders of the Diners Club corporate card." (Counterclaim Answer ¶ 16) In addition, in January 1997 Clever Ideas expressly demanded that Diners Club print the LeCard logo on the reverse side of the Diners Club corporate cards, thus confirming its knowledge of that use. See Exhibit B to Counterclaim and Answer, incorporated by reference herein. Thus, at least *five and one-half years* before Clever Ideas filed its Complaint on July 18, 2002, it knew of the precise activity complained of in its various claims of trademark infringement, unfair competition and deceptive

7

trade practices related to Diners Club's use of the LeCard logo and mark in connection with the Corporate Card program.

Since Clever Ideas' claims of infringement stem from its assertion that the Corporate Card program was not covered by the 1990 Agreement, and therefore the use of the LeCard mark and logo in connection with the Corporate Card program was also not covered by that agreement, those claims are clearly time barred because Clever Ideas was aware of this allegedly unauthorized use well beyond the three year limitations period. For instance, on March 30, 1999, the parties signed a letter agreement stating that "[w]e believe that our written agreement does not contemplate a Corporate Card program because the program did not exist when the agreement was signed, and because the agreement has not been amended to cover it. Whatever we agree to do with the [Corporate Card program] funds on hand is a matter to be agreed upon outside of the written agreement." March 30, 1999 letter from Heather Turk to Lee Suckow, Complaint Exhibit E; Answer and Counterclaim Exhibit D, incorporated by reference herein. To the extent that Clever Ideas' claims for infringement stem from the statements made in this letter, those claims again are time barred because Clever Ideas waited more than three years before asserting those claims for infringement.

Rather than file an action for trademark infringement, or otherwise seek to stop Diners Club from its allegedly unauthorized use of the LeCard mark and logo, Clever Ideas focused its energies on trying to receive a greater share of earnings from the Diners Club Corporate Card program. Clever Ideas may now regret its tactical decision, but that does not excuse its failure to timely assert its claims for infringement.

**B.      Clever Ideas' Delay Is Not Excused By The Continuing Wrong Doctrine.**

The continuing wrong doctrine does not save Clever Ideas' claims because the alleged

8

harm was definite and discoverable as soon as Diners Club began using the LeCard mark on Diners Club corporate cards and promoting the LeCard program (under the LeCard name) to corporate accounts and corporate cardholders. Clever Ideas knew of Diners Club's use of the LeCard mark in connection with the Corporate Card program from the outset of the program's launch in 1996. The allegedly improper or unauthorized use that forms the basis for Clever Ideas' claims of trademark infringement, unfair competition and deceptive trade practices was also continuous. Accordingly, the three-year limitations period began to run when CLI first became aware of the program in 1996. Diners Club is therefore entitled to judgment on the pleadings as to Count I, II, III, V, VI, VII and VIII of Clever Ideas' Complaint.

## II. COUNTS I, II, III, V, VII AND VIII ALSO ARE BARRED BY THE DOCTRINE OF LACHES.

At least five and one-half years before Clever Ideas filed its Complaint, it knew of the activity complained of in its claims with respect to all Corporate DC/LeCard Cards contained in Counts II and VII. This is nearly twice as long as the three-year presumption of laches period. There is no justifiable reason for this delay. Moreover, for the reasons stated above, the continuing wrong doctrine does not save Clever Ideas' claims.

As demonstrated above, the pleadings unequivocally confirm that Clever Ideas assented to Diners Club's use of the LeCard mark and logo in connection with the Corporate Card program. Diners Club relied on Clever Ideas' apparent assent, and thus would be severely prejudiced if Clever Ideas were allowed to assert its untimely claims. See *AT&T Corp. v. Synet, Inc.*, 1997 WL 89228, *8 (N.D. Ill. 1997) (claimant's infringement claim barred by estoppel if the alleged infringer establishes (1) the claimant, through misleading conduct, led the alleged infringer to reasonably infer that the claimant does not intend to enforce its rights against the alleged infringer; (2) the alleged infringer relied on the conduct; (3) due to its reliance, the

9

alleged infringer will be materially prejudiced if the claimant is allowed to proceed with its claim).

In the face of Clever Ideas' assent to the use of the LeCard mark and logo in connection with the Corporate Card program, Diners Club (a) purchased from Clever Ideas all Sales Drafts reflecting Member Restaurant purchases made with the Corporate DC/LeCard Cards under the Corporate DC/LeCard Plan, (b) charged and collected (directly or indirectly) the Diners Club Processing Fee on all corporate Cardmember purchases at Member Restaurants, (c) charged and collected the LeCard Processing Fee on all corporate Cardmember purchases at Member Restaurants, and (d) processed and settled those purchases . . . ." Complaint, ¶ 29.

Had Clever Ideas informed Diners Club when it first learned of Diners Club's plans to test and launch the Corporate Card program that it considered the use of the LeCard mark and logo in connection with that program to be unauthorized and to constitute trademark infringement, Diners Club could have taken appropriate actions. But Clever Ideas did not, and instead led Diners Club to invest enormous resources into a program only to face charges of trademark infringement more than five years after the fact.

For these reasons, Clever Ideas' claims also are barred by the doctrine of laches as well.

WHEREFORE, Diners Club respectfully seeks judgment on the pleadings with respect to all Corporate DC/LeCard Card claims contained in Counts I, II, III, V, VI, VII and VIII of the Complaint.

10

Respectfully submitted,

CITICORP DINERS CLUB INC.

By: _____
    One of its Attorneys

Javier H. Rubinstein
Britton B. Guerrina
Jason K. Schmitz
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603-3441
(312) 782-0600

*Counsel for Defendant/Counter-Plaintiff*
*Citicorp Diners Club, Inc.*

Dated: December 6, 2002

11

## CERTIFICATE OF SERVICE

Britton B. Guerrina, an attorney duly licensed to practice in the State of Illinois, certifies

that she caused a copy of the foregoing Citicorp Diners Club, Inc.'s Memorandum in Support of

Citicorp Diners Club Inc.'s Motion for Judgment on the Pleadings to be served upon:

> Wendi E. Sloane, Esq.
> Peter B. Jurgeleit, Esq.
> BARACK FERRAZZANO KIRSCHBAUM
>   PERLMAN & NAGELBERG LLC
> 333 West Wacker Drive, Suite 2700
> Chicago, Illinois 60606
> Attorneys for Plaintiff/Counterdefendant Clever Ideas, Inc.

via messenger before the hour of 5:00 p.m. this 6th day of December, 2002.

Britton B. Guerrina